CONSTRUCTION & GENERAL LA-
BORERS' LOCAL UNION NO. 230,
Raymond Abbott, Rachael Tillitson,
Horace Daley, Antonio Marrero, Dar-
lene Fraga–Relish, George Rosario,
and Reynaldo Medina, Plaintiffs,

v.

CITY OF HARTFORD, Defendant.

No. 3:99CV2063 AWT.

United States District Court,
D. Connecticut.

Aug. 2, 2001.

Patrick Tomasiewicz, Fazzano & Tomasiewicz, West Hartford, CT, for Plaintiffs.

Ann F. Bird, Corp. Counsel's Office, Hartford, CT, for Defendant.

### RULING ON MOTION TO DISMISS

THOMPSON, District Judge.

The plaintiffs, the Construction and General Laborers' Union, Local 230 (the "Union") and seven individual members of the Union (the "members"), bring this action against the City of Hartford (the "City"), claiming that certain City ordinances governing the award of publicly-assisted construction contracts unlawfully

discriminate on the basis of race, gender, and place of residence in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution. The defendant has filed a motion to dismiss the Amended Complaint as to all plaintiffs on the basis that neither the Union nor the members have standing to challenge the constitutionality of the ordinances at issue. For the reasons set forth below, the motion is being granted.

## I. *BACKGROUND*

The Union is a labor union representing construction laborers in Connecticut. The Union's membership, and the individual members named in the complaint, include persons of both genders and of various races. Some of the Union's members are Hartford residents, and some are residents of other towns and cities.

In 1986, the City enacted Article Ten, Division Five of the Municipal Code, entitled "Affirmative Action Plan: Employment on Assisted Projects". Sections 2–716 through 2–719 of this division (the "Ordinances") constitute what is commonly known as a "minority set-aside" program. Section 2–717 sets forth the workforce requirements at issue in this case. It reads as follows:

(a) The workforce on all assisted projects shall meet the following minimum criteria for construction employment:

City resident tradeworkers: 40% of total project hours;

Minority tradeworkers: 25% of total hours by trade;

Female tradeworkers: 6.9% of total hours by trade.

(b) During construction of assisted projects, one(1) of every five (5) workers shall be an apprentice of whom at least fifty (50) percent shall be city residents in their first year of apprentice training.

(c) Minority business enterprises shall receive at least twenty-five (25) percent of the dollar amount of total amount of subcontractor business.

(d) A covenant shall be filed on the land records by the developer of the assisted project providing that the work force maintained to manage the assisted project and that all lessees of the assisted project shall hire and maintain a work force that includes at least: (1) City residents in fifty (50) percent of all permanent jobs; and (2) Minority residents in forty-five (45) percent of all permanent jobs.

Hartford Mun.Code § 2–717.

An "assisted project" is defined in Section 1–2 of the Municipal Code as:

any commercial development which receives any public subsidy, including but not limited to tax abatements. tax fixing agreements, public bonds, public grants, and public land or easements sold or otherwise conveyed for the benefit of the development for less than the appraised fair market value as determined as of the date of transfer, and which shall not be located in an enterprise zone.

Hartford Mun.Code § 1–2.

"Minority" is defined as "a person of Black, Puerto Rican, Spanish–American, Oriental or American Indian ethnic or racial origin and identity. For purposes of this article, the term 'minority group persons' shall also include women." Hartford Mun.Code § 2–626.

Thus, the Ordinances set minimum criteria for the employment of women, minorities, and Hartford residents on all assisted projects. These Ordinances are consistently enforced by the City through its office of contract compliance.

The Union alleges that some of the Union's members, including the individual plaintiffs, wish to work on construction

projects funded by the City, but have been unable to gain employment on such projects because of the set-aside programs embodied in the Ordinances. The Union members allege that they are fully qualified to work on the City's construction projects, and are prevented from competing equally for such work by the existence and enforcement of the Ordinances.

The Union alleges that it is harmed by the Ordinances as an entity because its membership growth and the resultant revenue stream are dependent, in part, on the number of its members who are actively employed on construction projects financed by the City.

The City previously filed a motion to dismiss the plaintiff's complaint, which was granted on the grounds that the allegations in the original complaint were insufficient to establish that the plaintiffs have standing to challenge the Ordinances.[1] [See Doc. #10.] The court granted the plaintiffs leave to amend their complaint, and the defendant has now moved to dismiss the Amended Complaint on the grounds that the changes made do not cure the insufficiencies in the first complaint identified by the court.

## II. *LEGAL STANDARD*

■■■ "For purposes of ruling on a motion to dismiss for want of standing . . . [the court] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). A motion to dismiss for lack of standing should be treated as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

*See Rent Stabilization Assoc. of the City of New York v. Dinkins*, 5 F.3d 591, 594 n. 2 (2d. Cir.1993). "[T]he court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Jaghory v. N.Y. State Dept. of Educ.*, 131 F.3d 326, 329 (2d Cir.1997) (internal citations omitted); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

■■■ "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Mytych v. May Dept. Stores Co.*, 34 F.Supp.2d 130, 131 (D.Conn. 1999), quoting *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer*, 416 U.S. at 232, 94 S.Ct. 1683). However, "[w]hile the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996). *See also DeJesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir.1996) ("A complaint which consists of

---

1. The motion to dismiss was also granted on the grounds that the individual plaintiffs were named only as "John Doe" and "Jane Doe" in the original complaint. That defect was cured by the naming of specific individual plaintiffs, and the defendant challenges the Amended Complaint only on the issue of standing.

conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."); *Furlong v. Long Island Coll. Hosp.*, 710 F.2d 922, 927 (2d Cir.1983) (noting that while *"Conley* permits a pleader to enjoy all favorable inferences from facts that have been pleaded, [it] does not permit conclusory statements to substitute for minimally sufficient factual allegations.").

## III. *DISCUSSION*

■ The defendant argues that the Amended Complaint should be dismissed because the plaintiffs have not alleged facts that would support a conclusion that the Union or any of its individual members has standing to challenge the legality of the Ordinances. The essential elements of standing are well established:

> [A] plaintiff must meet three requirements in order to establish Article III standing. First, he must demonstrate injury in fact—a harm that is both concrete and actual or imminent, not conjectural or hypothetical. Second, he must establish causation—a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant. And third, he must demonstrate redressability—a substantial likelihood that the requested relief will remedy the alleged injury in fact. These requirements together constitute the irreducible constitutional minimum of standing.

*Vt. Agency of Natural Res. v. United States*, 529 U.S. 765, 770–71, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) (internal quotation marks and citations omitted).

It is helpful to remember the role the doctrine of standing serves in our legal system.

> No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies. *See Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947, 958 (1968). The concept of standing is part of this limitation. Unlike other associated doctrines, for example, that which restrains federal courts from deciding political questions, standing "focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Id.*, at 99, 88 S.Ct., at 1952, 20 L.Ed.2d, at 961. As we reiterated last Term, the standing question in its Art. III aspect "is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, [422 U.S. at 498–499, 95 S.Ct. 2197]. In sum, when a plaintiff's standing is brought into issue the relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision. Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation.

. . . . .

> The necessity that the plaintiff who seeks to invoke judicial power stand to profit in some personal interest remains an Art. III requirement. A federal court cannot ignore this requirement without overstepping its assigned role in our system of adjudicating only actual cases and controversies. It is according to this settled principle that the allegations of both the individual respondents and the respondent organizations must be tested for sufficiency.

*Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 37–39, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) (footnotes omitted).

Accepting as true all factual allegations in the Amended Complaint and drawing all inferences in the light most favorable to the plaintiffs, the plaintiffs can not prove that the injury they allegedly suffered was caused by the enactment and enforcement of the Ordinances, nor that the requested relief would redress the alleged harm. *See Conley,* 355 U.S. at 45–46, 78 S.Ct. 99 (1957); *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994).

### A. *Standing of the Individual Plaintiffs*

█ The members allege that they are fully qualified to perform construction work on projects funded by the City, but they are prevented from doing so on an equal basis by the Ordinances, and that "they are being deprived of an equal right to work due to race, gender, or residency." Am. Compl. ¶ 21. However, these allegations are insufficient to establish standing. The Supreme Court required a much more specific and direct showing in a case involving a challenge to restrictive zoning practices:

> Petitioners must allege facts from which it reasonably could be inferred that, absent the respondents' restrictive zoning practices, there is a substantial probability that they would have been able to purchase or lease in Penfield and that, if the court affords the relief requested, the asserted inability of petitioners will be removed.

*Warth,* 422 U.S. at 504, 95 S.Ct. 2197. Applying this standard to the case at hand, the individual plaintiffs here must allege facts from which it reasonably could be inferred that, absent the enforcement of the challenged Ordinances, there is a substantial probability that they would have been able to obtain jobs on City-assisted construction projects and that, if the court affords the relief requested, the asserted inability of the plaintiffs to obtain such jobs will be removed. The plaintiffs have not alleged such facts.

█ In *Simon,* the plaintiffs sought to challenge a change in federal tax policy extending favorable tax treatment to hospitals that did not give treatment to indigent people to the extent of the hospital's financial ability. The Court found that the plaintiffs had failed to establish the causation and redressability required for standing. The Court stated that although the plaintiffs had alleged that the new tax policy "discouraged" hospitals from serving the indigent,

> it does not follow from the allegation and its corollary that the denial of access to hospital services in fact results from petitioners' new ruling, or that a court-ordered return by petitioners to their previous policy would result in these respondents' receiving the hospital services they desire. It is purely speculative whether the denials of service specified in the complaint fairly can be traced to petitioners' 'encouragement' or instead result from decisions made by the hospitals without regard to the tax implications.

*Simon,* 426 U.S. at 42–43, 96 S.Ct. 1917. Likewise, here, it does not follow from the individual plaintiffs' allegation that they are being denied an equal opportunity to compete for jobs that this denial in fact results from the Ordinances. Further, it is purely speculative whether the fact that the individual plaintiffs have not been hired by the developers on assisted projects fairly can be traced to the Ordinances, or instead results from decisions made by the developers without regard to the Ordinances. Plaintiffs fail to meet their burden when "[s]peculative infer-

ences are necessary to connect their injury to the challenged actions of [the defendant]." *Id.* at 45, 96 S.Ct. 1917.

The plaintiffs cite the Supreme Court's decisions in *Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 211, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995), and *Northeastern Fla. Chapter, Assoc. Gen. Contractors of Am. v. Jacksonville,* 508 U.S. 656, 667, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) for the proposition that a party may establish injury, for standing purposes, by showing that it was deprived of the opportunity to compete equally for something—in those cases, a government contract, here, a job on an assisted project. However, in *Adarand,* the plaintiff specifically alleged that it had bid for a sub-contract and lost. The general contractor submitted an affidavit stating that the sole reason the plaintiff's bid had not been accepted was the existence of the challenged regulation. *Id.* at 205, 115 S.Ct. 2097. The plaintiff further established that it was very likely that it would continue to bid on such sub-contracts and continue to lose them due exclusively to the regulation. Hence, the plaintiff established both causation and redressability. Here, the members have not alleged that they would be hired by any project developer if the Ordinances were not in place. The members have not alleged that if the Ordinances are repealed, they will be able to obtain construction jobs on City-assisted projects. Thus, although it is true that under *Adarand* the plaintiffs may be able to meet the first prong of the standing test, *i.e.,* injury, they can not meet the second and third prongs.

The only substantive change made by the plaintiffs in amending their complaint was the addition of an allegation that all developers working on assisted projects are required to enter into a written agreement providing that they will abide by the Ordinances. The plaintiffs argue that this addition establishes that the City "seeks to compel private developers to implement the ordinance's set-asides." Memo. Opp. Mot. to Dismiss at 5. The plaintiffs miss the point of the standing inquiry. It is clear that the City's objective is to require developers on assisted projects to maintain a workforce meeting certain requirements. What the plaintiffs do not address, by means of allegations or reasonable inferences therefrom, though, is how the implementation of that objective through the adoption and enforcement of the Ordinances, directly and concretely injures the plaintiffs, and, further, how an order from this court would redress any such injury. It is possible that developers would choose to hire certain percentages of women, minorities and Hartford residents regardless of the Ordinances. It is possible that developers would refuse to hire members of the Union, and the individual plaintiffs, even if the Ordinances were repealed. The plaintiffs have not alleged facts that would support a conclusion that their asserted inability to compete equally for jobs on assisted projects is actually and directly caused by the adoption and enforcement of the Ordinances. They have not alleged facts that would support a conclusion that an order repealing the Ordinances would redress their injury. The plaintiffs have thus failed to salsify the second and third prongs of the standing test set out above. The plaintiffs here are in a position comparable to that of the plaintiffs in *Simon,* where the court said:

> We note at the outset that the five respondent organizations, which described themselves as dedicated to promoting access of the poor to health services, could not establish their standing simply on the basis of that goal. Our decisions make clear that an organization's abstract concern with a subject that could be affected by an adjudication does not

substitute for the concrete injury required by Art. III. *Sierra Club v. Morton,* [405 U.S. 727, 92 S.Ct. 1361 (1972) ]; *see Warth v. Seldin,* supra.

*Simon,* 426 U.S. at 39, 96 S.Ct. 1917.

### B. *Standing of the Union*

 In order bring suit on behalf of its members, an organization must allege that "its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Warth,* 422 U.S. at 511, 95 S.Ct. 2197. As discussed above, the allegations in the Amended Complaint, together with the reasonable inferences therefrom, are not sufficient to allow the court to conclude that any of the Union's individual members have standing to challenge the Ordinances. Therefore, the Union lacks representative standing.

 The Union also lacks standing to sue on its own behalf, because the complaint does not allege the causation and redressability that are required to establish standing. The Union alleges that its membership and revenue are dependent upon "the number of its members who are actively employed on City of Hartford construction projects and other projects" and on "the ability of each of its members to compete equally for all available jobs." Am. Compl. ¶ 5. However, as discussed above, the individual plaintiffs have not alleged facts from which it reasonably could be inferred that the Ordinances actually cause the injury asserted. Nor have they alleged facts from which it reasonably could be inferred that this court could redress their injury by enjoining the City from enforcing the Ordinances. The Union can not establish, on the basis of the facts alleged in the Amended Complaint, that its alleged injury, loss (or limited growth) of membership and revenue, is caused by the Ordinances, nor that the remedy sought would redress the injury. Therefore, the Union has failed to establish that it has standing to challenge the Ordinances on its own behalf.

## IV. *CONCLUSION*

The Supreme Court has held that

it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing. If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint *must* be dismissed.

*Warth,* 422 U.S. at 501, 95 S.Ct. 2197 (internal citations omitted, emphasis added). In this case, the court gave the plaintiffs an opportunity to amend their complaint to add allegations that would demonstrate that the plaintiffs have standing. However, the Amended Complaint does not contain allegations sufficient to support a finding that the plaintiffs have standing. Therefore, the Defendant's Motion to Dismiss Amended Complaint [Doc. # 17] is hereby GRANTED.

Judgment shall enter in favor of the defendant, and the Clerk shall close this case.

It is so ordered.